This is a defamation case. The complaint alleges that:
 I. The Plaintiffs, Gabriella Gray, Gabriella B. Gray, and James W. Gray are all individuals over the age of twenty-one (21) years and are residents of Mobile County, Alabama. The Plaintiff, Gray 
Company, Inc., is a corporation with its principal place of business in Mobile County, Alabama.
 II. The Defendant Carlton Cordell is an individual over the age of twenty-one (21) years and a resident of Mobile County, Alabama. The Defendants WALA-TV and Universal Communications Corporation are corporations with their principal place of business in Mobile County, Alabama.
 III. The individual Plaintiffs are stockholders, directors, officers and/or operators of a corporation known as Gray Company, Inc., which is a firm engaged in the business of advertising and public relations in Mobile County, Alabama. *Page 1064 
 IV. The Defendants WALA-TV and Universal Communications are corporations which have as their principal business the broadcasting of television programs over the public airwaves, with a listening and viewing audience of hundreds of thousands of persons in the area of Mobile County, Alabama. The Defendant, Carlton Cordell is an employee of the above named defendants, and is employed as News Director.
 V. On the nights of, to-wit, July 15, July 17, July 18, and July 21, 1975, the Defendant, Carlton Cordell, an agent, servant or employee of the other defendants, and while acting within the line and scope of his authority as such, spoke of and concerning the Plaintiffs, in substance as follows:
 That the Plaintiffs had contracted with the City of Mobile for the production of auditorium brochures, that the City had made full payment to the Plaintiffs some five and one-half months before, that the Plaintiffs had failed to deliver any brochures, that no member of the auditorium board knew or had been informed of the contract, that the actions of the Plaintiffs were in violation of the laws of the State of Alabama, that the brochures had been contracted for over a year and that none had been received even though the Plaintiffs had received $15,000 for them, and that the Plaintiffs had handled the election campaign of the person who was Mayor at the time the contract was awarded.
 VI. Plaintiffs aver that the aforesaid statements conveyed the false meaning and impression that the Plaintiffs were guilty of violations of the law of the State of Alabama, and that the Plaintiffs were guilty of sharp, unethical, dishonest and/or illegal acts in the conduct of their business, and that the Plaintiffs had failed to fulfill their contracts. Plaintiffs aver that the said statements brought them into public contempt, injured Plaintiffs in their reputation and in their business, and subjected them to public ridicule. Plaintiffs further aver that the statements were broadcast even though the Defendants knew they were false, or were broadcast with a reckless disregard of whether they were true or false, and Plaintiffs therefore claim punitive damages.
The defendants' motion to dismiss the complaint was initially denied. Subsequently, the defendants moved for summary judgment with supporting affidavits, etc. This motion was also denied. Later the court granted the motion to dismiss. In many instances when a court grants a motion to dismiss after considering factual matter the ruling is considered to be under Rule 56, ARCP, rather than Rule 12 (b)(6), ARCP. However, in this case it is strongly inferable from the record as well as the briefs that the court intended to grant a Rule 12 (b)(6) motion to dismiss on the ground that the broadcasts were not per se defamatory, and special damages were not alleged.
In view of the state of the record, and in view of the facts that the plaintiffs have appealed from the order granting the motion to dismiss and the defendants have cross-appealed from the denial of the motion for summary judgment, and because the case is briefed in this posture, we will treat it accordingly.
The parties do not characterize this cause of action as either libel or slander. There is nothing in the record to indicate whether the trial judge considered this to be an action in libel or slander. The defendants argue that the complaint alleges "defamation per quod" rather than "defamation per se," and that because special damages are not alleged the court should have granted the motion to dismiss.
We must determine what type action this is, because in Marionv. Davis, 217 Ala. 16, 114 So. 357 (1927), this Court held that:
 There is a distinction between actions of libel predicated on written or printed malicious aspersions of character, and actions of slander resting on oral defamation, too well grounded in the law to be now questioned. This distinction, however, *Page 1065 
is merely in respect to the question as to whether the imputed language or words are actionable per se.
 In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se. While to constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude. Ex parte West (Re Peinhardt v. West)
[115 So. 88] supra; Rice v. Simmons, [2 Har. (Del.) 417, 31 Am.Dec. 766] supra; 36 C.J. 1152, § 19; 17 R.C.L. pp. 263, 264, §§ 3 and 4.
 This distinction, however, does not deny the right to maintain an action for slander founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor. In such case the law pronounces the words actionable per quod only, and the plaintiff must allege and prove special damages as an element of the cause of action. 17 R.C.L. p. 264, § 4.
We find that television broadcasts of defamatory matter must be declared upon as libel rather than slander. In FirstIndependent Baptist Church v. Southerland, 373 So.2d 647 (Ala. 1979), this Court held that the broadcasting of defamatory matter by means of radio is libel, whether or not it was read from a manuscript. In that case the Court cited Restatement (Second) of Torts § 568A (1966), which states:
 Broadcasting of defamatory matter by means of radio or television is libel, whether or not it is read from a manuscript.
This Court, however, in Southerland, deleted the reference to television from this quote.
Based upon the considerations in First Independent BaptistChurch v. Southerland, we are of the opinion that § 568A of the Restatement (Second) of Torts, as it applies to both radio and television broadcasts, should be the rule within this jurisdiction.
We must now determine whether the broadcasts are libelous per se. In doing so their actionable character is to be taken in their natural meaning according to the sense in which they appear to have been used, and the idea they convey to those who heard and saw them. The broadcasts are not to be measured by their effect when subjected to the critical analysis of a trained legal mind, but must be construed and determined by their natural and probable effect upon the mind of the average television viewer. White v. Birmingham Post Co., 233 Ala. 547,172 So. 649 (1937).
If the words employed in the allegedly libelous publication impute dishonesty or corruption to an individual, they are actionable per se. Ferdon v. Pickens, 161 Ala. 181, 49 So. 888
(1909).
It is also the law that words are libelous per se which directly tend to prejudice anyone in his office, profession, trade or business, or in any lawful employment by which he may gain his livelihood. Gaither v. The Advertiser Co., 102 Ala. 458,14 So. 788 (1893).
We think it is fair to say that the words employed imputed to the plaintiffs that they had corruptly and illegally obtained, through political connections, a contract with the city and had not performed under the contract although having been paid to do so, and thereby dishonestly obtained public funds. Certainly in this day and time an accusation of political corruption would subject the plaintiffs to public ridicule and would injure their reputation, both individually and in their business. Thus, we are of the opinion that the publications if false are libelous per se. Wofford v. Meeks, 129 Ala. 349,30 So. 625 (1900).
The final issue for our consideration is the appropriateness of the trial court's denial of defendants' motion for summary judgment.
Summary judgment, under Rule 56 (c), ARCP, is to be entered where there is *Page 1066 
no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the absence of a genuine issue as to any material fact. Whether the trial court was correct in denying defendants' motion for summary judgment depends upon whether the affidavits presented by the defendants show, as a matter of law, no malice in defendants' broadcasts.
For a publication to fall within the actual malice standard of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710,11 L.Ed.2d 686 (1964), it must have been made with a knowledge of its falsity or with a reckless disregard as to whether it was false or not. There is no need in this case to determine whether the plaintiffs are public figures because the complaint alleges "Sullivan Malice." Moreover, since only punitive damages are claimed, "Sullivan Malice" must be proved in any event. Gertz v. Robt. Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974). This actual malice standard was further elaborated on in St. Amant v. Thompson, 390 U.S. 727,88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); there it was stated that reckless disregard requires:
 * * * sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication.
88 S.Ct. at 1325.
In examining the depositions and affidavits submitted on summary judgment we find that Carlton Cordell, news director of WALA-TV, was first apprised of the contract in question on July 14, 1975, when he received a phone call from a Mobile Auditorium Board member. Cordell then attempted to verify this information. This verification included obtaining a copy of the contract and contacting the City Controller to confirm certain aspects of the contract.
Following the initial broadcast on July 15, 1975, Cordell was informed by Gabriella Gray of alleged inaccuracies in the broadcast. Cordell states he offered to send a reporter to meet with her. Gray denies this.
WALA-TV made further attempts to gather additional information after the July 15th broadcast. A reporter was assigned to the story and various officials at City Hall were contacted.
On July 22, 1975, Cordell received a letter from Gray's attorney which informed him that the information being broadcast was in error and on July 25, Commissioner Greenough issued a statement concerning this story which was not in accord with defendants' story. WALA-TV continued with its version of the story. In total, WALA-TV aired this story over forty times during an eleven month period.
In viewing the above facts in a light most favorable to the plaintiffs we find no error in the trial court's denial of defendants' motion for summary judgment. Whether the defendant entertained serious doubts as to the truth of these broadcasts is a question peculiarly suited for a jury determination.American Benefit Life Ins. Co. v. McIntyre, 375 So.2d 239 (Ala. 1979); Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137
(1975).
We are of the opinion that the trial court was correct in denying the defendants' motion for summary judgment, but erroneously granted the motion to dismiss. Thus, we affirm the summary judgment order and reverse the motion to dismiss order.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES[1] and EMBRY, JJ., concur.
[1] Justice Jones, sitting for Justice Bloodworth, has listened to the tape recording of oral argument. *Page 1067